### THE BREWSTER.[1]

(District Court, D. California. 1868.)

1. SHIPPING—MASTER—RIGHT TO SELL CARGO.

A ship encountered such a storm that she sprung a leak, and returned to port for repairs, where the cargo was unloaded and stored. When ready for sea, the master refused to reship certain coal which formed part of the cargo, and had become wet, because of its great liability to ignite spontaneously, owing to its dampness. On the shipper's refusal to receive it, the coal was sold by the master for much less than its value. Held, that he had the right to sell it, under the circumstances, for the good of the ship and cargo, and the ship was not liable for its nondelivery.

2. SAME—GENERAL AVERAGE.

On a lawful sale of a portion of a cargo by a master for the general good of the ship and cargo, it should be accounted for on a general average.

In Admiralty. This was a libel against the ship Brewster to determine the liability for a portion of the cargo sold by the master.

HOFFMAN, District Judge. This was an amicable action, brought for the purpose of settling the respective rights of the owners of the ship Brewster, the shippers of a part of the cargo, and the insurers of ship and cargo. In February, 1867, Haste & Kirk, of New York, shipped on board the Brewster, bound for San Francisco, 158 casks of Cumberland coal. The ship proceeded on her voyage, and in March following encountered such severe weather that she sprung a leak. Jettison had to be made of a portion of her cargo, and the ship returned to New York in April, about two months after she sailed. The cargo was landed and stored, and the ship repaired. That portion of the cargo which was damaged to such an extent as to render it improper to reship it was sold to prevent a total loss thereof. The casks of coal were wet in consequence of the disaster. They were landed and stored, and when the ship was ready for sea the shippers of the coal demanded that the same should be reshipped on board, and conveyed to the port of destination. The examination of the surveyors showed that the coal had

---

[1] This case has been heretofore reported in 2 Am. Law Rev. 569, and is now published in this series, so as to include therein all circuit and district court cases elsewhere reported which have been inadvertently omitted from the Federal Reporter or the Federal Cases.

not only been wet, but had become very fine in consequence of the dampness, and that there was danger of its igniting from spontaneous combustion. It also appeared that this class of coal was in danger of igniting at a temperature of 90, or even 75, degrees. As the shippers of the coal refused to receive the same, the master had either to carry it forward, or sell it for account of whom it might concern. It was sold by the master, and brought much less than its value. On the arrival of the ship at San Francisco, she was libeled for nondelivery of the coal, as stipulated in the original bills of lading. It appeared in evidence that this class of coal, when wet, was very liable to spontaneous combustion, and that no prudent shipmaster would take it on board in such condition, and that insurers would consider it imprudent to take a risk on a vessel and cargo with such wet coal on board. It also appeared that the coal itself was as valuable when in the wet as in a dry state, was in fact afterwards shipped to San Francisco, and sold for its full value, and that the sale thereof by the master of the ship was not for the preservation of the coal, but to prevent danger to the ship and cargo from fire, by reason of its liability to ignite spontaneously. The questions presented were whether the master had a right to sell the coal under the circumstances, and, if so, whether it was to be paid for on general average. The court held that the coal was sold for the general good of the ship and cargo; therefore the ship was not liable for the nondelivery of it, and it was to be accounted for on general average.